IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 23-54 |
| DONALD TYREE SMITH, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is Defendant's Motion for Revocation of Order of Detention, which is opposed by the Government. (*See* Docket Nos. 35, 41, 44). After careful consideration of the parties' positions, review of the detention hearing transcript and evidence entered at the detention hearing, and the referenced Pretrial Services Report, (Docket Nos. 39; 41-1 – 41-9), Defendant's Motion will be denied. As required by 18 U.S.C. § 3142(i)(1), the following includes the Court's findings of fact and statement of the reasons for detention.

**I.   BACKGROUND**

   **A.   PROCEDURAL HISTORY**

On March 21, 2023, Defendant was charged in a two-count Indictment with one count of unlawful possession of a machine gun, in violation of 18 U.S.C. § 922(o)(1) and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), both for conduct occurring on or about March 5, 2023. (Docket No. 3). Defendant made an initial appearance on March 29, 2023, and he subsequently was arraigned on April 3, 2023, at which time he pled not guilty to the charges. (Docket Nos. 15, 19, 20). Following a detention hearing conducted by Magistrate Judge Patricia L. Dodge, Defendant was ordered to remain detained pending trial or other disposition of this matter. (Docket Nos. 23, 24).

1

Defendant now moves for revocation of the detention order, arguing that he should be released pending trial because he is not a flight risk or a danger to the community. (*See generally* Docket No. 35). In support, Defendant submits that "circumstances have changed since he was ordered detained," (*id.*, ¶ 9), although he does not specify what constitutes those supposed changed circumstances. Defendant only argues, as he did at the detention hearing, that he has a residence in this District where he could reside with his mother, and therefore he could be released on home detention with electronic monitoring pending trial. (*Id.*, ¶ 10; Docket No. 44, ¶ 3). He also notes that he was required to undergo detoxification when he was first incarcerated in this case, and the Court could order that he undergo drug and alcohol treatment if he were to be released on bond. (Docket No. 44, ¶ 2).

The Government opposes Defendant's Motion to revoke the detention order, contending that Defendant's proffered release plan does not rebut the presumption of detention that is triggered by evidence that he engaged in drug trafficking and that he possessed a machine gun in furtherance thereof. (Docket No. 41 at 6-7). Even if Defendant has rebutted the presumption in favor of detention, the Government maintains that it has established by clear and convincing evidence that there are no conditions of release which will assure the safety of the community if Defendant were to be released pending trial because: the offense conduct involves the dangerous combination of guns and drugs; the weight of the evidence is strong; he has a substantial criminal history involving serious, felonious conduct and a poor history of performance while under court supervision; and he poses a danger to the safety of the community because he is a recidivist drug trafficker with a history of violence. (*Id.* at 7-12).

## B. EVIDENCE ADDUCED AT THE DETENTION HEARING

At the detention hearing, the Government proffered the testimony of Pittsburgh Police Detective Sean Rattigan and introduced Government Exhibits 1 through 9 as follows: excerpt of Detective Rattigan's Body Worn Camera ("BWC") from Defendant's arrest on March 5, 2023 (Ex. 1); still images from Detective Rattigan's BWC (Exs. 2 and 3); Allegheny County Office of the Medical Examiner ("ACOME") Laboratory Report for testing of the firearm recovered from Defendant (Ex. 4); ACOME Laboratory Report for testing of the narcotics recovered from Defendant and his residence (Ex. 5); photograph of items recovered from Defendant's residence, vehicle, and person (Ex. 6); photograph of an envelope containing K2-soaked paper recovered from Defendant's residence (Ex. 7); photograph of items recovered from Defendant's residence, including K2-soaked paper (Ex. 8); and a demonstrative video created by the ATF regarding the functioning and installation of Glock conversion devices on a Glock Pistol (Ex. 9).[1] (Docket No. 39 at 5-12).

The Government proffered that Detective Rattigan would testify as follows. On March 5, 2023, Pittsburgh Police narcotics detectives conducted a buy bust of Defendant, who had an outstanding warrant issued in 2020 from Westmoreland County for various felony offenses, including possession with intent to deliver controlled substances. (Docket No. 39 at 7). An undercover detective contacted a telephone number believed to belong to Defendant and arranged for the purchase of narcotics. (*Id.*). Detectives conducting surveillance of Defendant's suspected residence observed him exit at 2:40 p.m., get into his vehicle and drive away. (*Id.*). At 2:50 p.m., detectives conducting surveillance near the designated meeting location observed Defendant's

---

[1] The Government's Exhibits are attached to its Response in Opposition to Defendant's Motion, (Docket Nos. 41-1 – 41-9), and the Court was provided with a digital storage device containing the videos of Exs. 1 and 9.

vehicle arrive. (*Id.* at 8). Defendant contacted the undercover detective via FaceTime to advise that he had arrived. (*Id.*). The undercover detective then approached Defendant's vehicle, observed him to be the driver, and purchased $200 worth of fentanyl and a piece of paper suspected of being soaked in K2. (*Id.*).

After completing the transaction, the undercover detective gave the takedown signal, and the arrest team moved in to take Defendant into custody. (Docket No. 39 at 8). While that was occurring, Detective Rattigan observed Defendant dip his shoulder and arm toward the floor area beneath his seat before exiting the vehicle. (*Id.*). After Defendant was in custody, detectives confirmed that he had been the sole occupant of the vehicle. (*Id.*). Detective Rattigan observed in plain view on the driver's side floorboard of the vehicle a semiautomatic pistol with an extended magazine. (*Id.*).

Detectives obtained a state search warrant for the vehicle and recovered the pistol, which was a stolen Glock Model 23 .40 caliber pistol bearing serial number RVX890 equipped with a 22-round magazine. (Docket No. 39 at 8-9). The pistol was loaded with 20 live rounds and had attached to it a Glock conversion device, which converts a semiautomatic pistol into a fully automatic machine gun.[2] (*Id.* at 9). A cellular telephone was also recovered from the vehicle, which was determined to be the same telephone Defendant used to arrange the drug transaction with the undercover detective. (*Id.*).

Detectives also obtained a state search warrant for Defendant's residence. (Docket No. 39 at 10). Following a search of the residence, detectives recovered the following: a Ziploc bag containing large chunks of suspected fentanyl; a knotted plastic bag containing suspected fentanyl; a knotted bag containing suspected crystal meth; three .45 caliber Glock magazines, including a

---

2   As explained in the Government's proffer, both a Glock conversion device and a pistol with one affixed to it are considered machine guns. (Docket No. 39 at 9).

4

30-round magazine; plastic bags; an envelope containing 13 pages of suspected K2-soaked legal paper; a digital scale with white powder residue; and indicia for Defendant. (*Id.* at 10-11).

The firearm and narcotics were submitted to the ACOME for testing. (Docket No. 39 at 11). As reflected in Government Exhibit 4, the firearm was determined to be fully automatic and incapable of firing in a semiautomatic capacity. (*Id.*). As shown in Government Exhibit 5, laboratory testing of the narcotics indicated that the detectives had recovered over 60 grams of fentanyl from the undercover buy and Defendant's residence, eight grams of suspected crystal meth, and legal pages soaked with synthetic cannabinoids commonly known as K2. (*Id.*). Government Exhibits 6, 7 and 8 are photographs of evidence seized from Defendant, his vehicle, and his residence. (*Id.*). Finally, the Government displayed Exhibit 9, which is a video regarding Glock switches. (*Id.* at 11-12).

The Government offered Detective Rattigan for cross-examination, but the defense elected not to cross-examine him. (Docket No. 39 at 12). The only information the defense introduced at the detention hearing was certain information contained in the Pretrial Services Report indicating that Defendant is a lifelong resident of this District, he was employed at the time, and he was on bond in other state court cases. (*Id.* at 12-13).

After reviewing the detention hearing transcript, the evidence introduced at the hearing, and the Pretrial Services Report and considering the parties respective arguments set forth in the briefing, the Court concludes that there is no condition or combination of conditions which will reasonably assure the safety of the community if Defendant is released. As such, his Motion to revoke the detention order is denied for the reasons detailed herein.

## II.  LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings.  Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  A district court exercises *de novo* review over a detention order entered by a magistrate judge.  *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).  "De novo review does not require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing."  *United States v. Kolonis*, No. 2:20-cr-0146, 2020 WL 5253192, at *3 (W.D. Pa. Sept. 3, 2020) (quoting *United States v. Burgess*, No. 2:09-cr-150, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also United States v. Bastianelli*, Crim. No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record.").  The Court may incorporate the transcript of the proceedings before the magistrate judge and does so here.  *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994).  The Court "may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings," which it likewise does here.[3]  *Burgess*, 2009 WL 2038148, at *1 (citation omitted).

As noted, the availability of pretrial release is controlled by the BRA, which provides that

---

[3]  As stated, the Court has reviewed the transcript of the proceeding conducted by Magistrate Judge Dodge, considered the Pretrial Services Report and the additional information and material set forth in Defendant's Motion, the Government's Response and Defendant's Reply, and concludes that a hearing is not necessary because the record has been fully developed.

6

a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the § 3142(g) factors concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Certain cases raise a rebuttable presumption that no condition or combination of conditions

will reasonably assure the defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies to cases, among others, in which there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3)(A).

A defendant may rebut the presumption in § 3142(e) by producing "some credible evidence . . . that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively light and has been construed as easy to meet.[4] *Chagra*, 850 F. Supp. at 357 (citation omitted). If rebutted, however, the presumption does not disappear but rather "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* at 358 (citation omitted). If the defendant rebuts the presumption, the burden of persuasion remains with the Government. *Id.* at 357. Thus, the Government bears the burden of proving that the defendant presents either a risk of flight or a danger to the community.[5]

### III.     DISCUSSION

Initially, although the Indictment does not charge Defendant with committing an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or

---

[4] To rebut the presumption that the defendant presents a danger to the community, "he must come forward with some credible evidence that he will not continue to engage in the drug activities with which he has been charged." *Chagra*, 850 F. Supp. at 358 (citations omitted). This may be accomplished through "'testimony by co-workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or family situation.'" *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986) (quoting *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)).

[5] The Government must prove by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Government must prove by clear and convincing evidence that the defendant is a danger to the safety of any other person or the community. *Delker*, 757 F.2d at 1399.

more, Magistrate Judge Dodge found, and this Court agrees, that the rebuttable presumption applies given the nature of the offenses as shown by the evidence presented at the detention hearing. (Docket Nos. 24 at 2; 39 at 18). Defendant does not dispute that the rebuttable presumption applies. (*See generally* Dockets Nos. 35, 39, 44). Although Magistrate Judge Dodge found that Defendant presented evidence sufficient to rebut the presumption, after considering the factors set forth in 18 U.S.C. § 3142(g), she further found that Defendant must be detained pending trial because the Government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community. (Docket Nos. 24 at 2; 39 at 19-22).

As Defendant argued at the detention hearing and reiterates in his briefing, he is able to rebut the presumption because he is a lifelong resident of this District, he had been employed, he had been released on bond in other cases, his mother is willing to allow him to reside with her, and he could be placed on home detention with electronic monitoring. (Docket Nos. 35, ¶ 10; 39 at 17; 44, ¶ 3). Accordingly, Defendant submits that conditions can be imposed such that he should be released on bond pending trial or other disposition of this matter.

After reviewing the record, the Court finds that, even assuming Defendant introduced sufficient evidence to rebut the applicable presumption, the Government has presented clear and convincing evidence that he is a danger to the safety of the community such that pretrial detention was, and is, appropriately ordered in this case. In reaching this decision, the Court has conducted an independent examination of the record as a whole and balanced the four factors set forth in 18 U.S.C. § 3142(g). For reasons that follow, the Court finds that the available information and proffered evidence on each of those factors weigh in favor of detention.

### A. Nature and Circumstances of the Offenses Charged

As shown by the evidence introduced at the detention hearing, Defendant engaged in extremely serious conduct involving firearms and controlled substances. The danger drug trafficking poses to the community is only exacerbated when drug dealers possess firearms. *See Smith v. United States*, 508 U.S. 223, 240 (1993) (observing that "drugs and guns are a dangerous combination"). Here, the potential danger posed by Defendant's conduct at issue was exponentially increased by his possession of a pistol that was loaded with 20 live rounds and had attached to it a Glock conversion device, which converts a semiautomatic pistol into a fully automatic machine gun. (Docket No. 39 at 9). As demonstrated by Government Exhibit 9, this type of firearm is capable of quickly discharging a high volume of ammunition in a very inaccurate manner, making its possession by Defendant even more dangerous. According to the evidence introduced at the detention hearing, Defendant allegedly brought this firearm with him to a pre-planned drug deal involving fentanyl, creating a potentially dangerous situation for any individuals in the vicinity where the deal occurred. Consequently, the nature and circumstances of the offenses charged weigh very strongly in favor of pretrial detention.

### B. Weight of the Evidence

As a general matter, the Court observes that the weight of the evidence against Defendant is strong, as reflected by the grand jury's return of the Indictment which establishes probable cause that the offenses occurred. More specifically, while Defendant is presumed innocent of the charged offenses, the Government introduced evidence at the detention hearing indicating that he executed a drug deal with an undercover detective, and a loaded machine gun subsequently was found in Defendant's vehicle (in which he was the only occupant) when he was arrested. (Docket No. 39 at 8-9). Therefore, while recognizing that Defendant is presumed innocent of the charged

offenses, the weight of the evidence against him favors pretrial detention.

## C. History and Characteristics of Defendant

As to Defendant's background and characteristics, he is 36 years old, he was born in Pittsburgh, Pennsylvania, and he is a lifelong resident of the Pittsburgh area.[6] Defendant has daily contact with his mother, and regular contact with his father and three half-brothers. He is single and has an 11-year-old daughter, with whom he also has regular contact. As to community ties, Defendant represented that he resided with his mother at an address on Chislett Street in Pittsburgh since 2015. As discussed, Defendant proposes to reside with his mother if he is released. (*See* Docket No. 44, ¶ 3).

Defendant started working full time at Toraya Touch in March 2023. His other prior employment consists of working for one year at the Cheesecake Factory. While it is commendable that Defendant had been employed, the Court notes that his legitimate employment apparently did not cause him to cease his alleged involvement in criminal activity.

Next, Defendant advised that he was diagnosed with a mental health condition in 2014, and he completed inpatient mental health treatment in 2015. From a physical standpoint, Defendant believes he has kidney failure, but he has not been diagnosed with that condition and has not received any treatment. Although the Pretrial Services Report indicates that Defendant reported no history of substance abuse, he submits in his briefing that he was required to undergo detoxification when he was first incarcerated in this case. (Docket No. 44, ¶ 2). This discrepancy calls into question whether he was forthright when he was interviewed by Pretrial Services.

---

[6]  Defendant's background, residence, family ties, employment history, physical and mental health, substance abuse history and criminal history are set forth in the Pretrial Services Report. The Court notes that neither party has objected to the contents of this Report relative to Defendant's background and history.

Turning to Defendant's criminal history, he has prior convictions of numerous serious offenses, including aggravated assault, carrying a firearm without a license, possession with intent to deliver a controlled substance, criminal trespass, endangering the welfare of children, and fleeing or attempting to elude a police officer. Defendant was sentenced to periods of incarceration for a number of these prior offenses. Moreover, Defendant committed new offenses on numerous occasions in the past while under court supervision, and he is alleged to have engaged in the conduct charged in the instant case while there was an active warrant for his arrest from Westmoreland County for multiple felony offenses. Overall, Defendant's prior interactions with the criminal justice system have not deterred him from engaging in additional criminal activity, nor did court-imposed conditions and supervision curb his unlawful behavior. All told, Defendant's criminal history and conduct while under court supervision weigh very strongly against pretrial release.

In analyzing Defendant's history and characteristics, the Court is cognizant that it must consider all possible conditions of release, including his proposal to reside with his mother, Juwanna Scott, who appears to be willing to serve as a third-party custodian. (*See* Docket No. 44, ¶ 3) (stating that Defendant "has a place to reside with his mother if he is released pending trial"). The Court appreciates that Ms. Scott is amenable to serving as a third-party custodian for Defendant, but has serious concerns about such an arrangement, regardless of who would assume that role. Although Ms. Scott is no doubt well-intentioned, the mere fact that she is willing to serve as a third-party custodian does not mean that she, or anyone else, could adequately supervise a defendant who is charged with extremely serious firearms offenses and who has a history of engaging in criminal conduct involving firearms, drugs, and violence. *See United States v. Bey*, Crim. No. 15-87, 2015 WL 7176340, at *5 (W.D. Pa. Nov. 13, 2015) ("[T]he mere fact that a

12

relative or other individual is willing to serve as a third-party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case."). Overall, the Court finds that Defendant's history and characteristics weigh in favor of pretrial detention.

### D. Nature and Seriousness of Danger to Any Person or the Community if Released

The final factor requires consideration of the nature and seriousness of the danger to any person or the community if Defendant is released. As to this factor, possession of a machine gun, alone, presents an obvious danger to others given that gun violence all too commonly plagues communities. Furthermore, this Court previously has explained the danger to the community posed by drug trafficking, stating that:

> [It] agrees with others which have observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drug such as cocaine as alleged to have occurred here. *See Bastianelli*, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."). Distribution of Schedule II controlled substances like cocaine have a "high potential for abuse" and that abuse "may lead to severe psychological or physical dependence." *See Bastianelli*, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community.
>
> Ultimately, consideration of this factor requires a court to "*predict* whether defendant will engage in drug trafficking if released pending trial." *United States v. Bratcher*, Crim. No. 14-28, 2014 WL 1371582, at *8 (W.D. Pa. Apr. 8, 2014) (emphasis in original) (citing *Perry*, 788 F.2d at 114) ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior.")). The Court recognizes, as others have, that strict conditions of release, including conditions such as home confinement and electronic monitoring, cannot guarantee that a defendant will no longer engage in criminal activity. *See e.g.*, *Bastianelli*, 2018 WL 1015269, at *8 (citing *United States v. Yarbough*, No. 2:14-cr-270-11, 2014 WL 7343839,

13

*4 (W.D. Pa. Dec. 23, 2014) ("If released to home detention, nothing prevents Defendant from continuing to engage in illegal activity.")).

*United States v. Araiza-Vega*, Crim. No. 20-218, 2020 WL 6546136, at *8 (W.D. Pa. Nov. 6, 2020) (Hardy, J.).

Combining firearm possession with the trafficking of highly addictive and potentially deadly drugs, as the detention hearing evidence in this case showed, only exacerbates the potential for violent, dangerous conduct to negatively impact the community. *See Smith*, 508 U.S. at 240 (observing that "drugs and guns are a dangerous combination"); *United States v. Oliver*, Crim. No. 16-40, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) ("[T]he utilization of firearms in furtherance of drug trafficking poses a significant threat of violence."). Quite simply, Defendant's conduct underlying the charges in this case poses an obvious danger to the community. Even more troubling, Defendant's prior sentences of incarceration and/or the conditions imposed upon him in his prior cases did not deter him from engaging in the serious criminal activity charged here, which suggests that he may be inclined to repeat his illicit activity if released. As such, this final factor weighs in favor of pretrial detention.

In sum, after considering the record as a whole, including the serious nature and circumstances of the offenses charged, the strong weight of the evidence against Defendant, his history and characteristics, the nature and seriousness of the danger to the community posed by Defendant's release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which will reasonably assure the safety of any other person and the community if Defendant is released pending trial in this matter. Accordingly, pretrial detention was, and is, appropriately ordered.

## IV. CONCLUSION

Given the Court's finding that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released, his Motion for Revocation of Order of Detention, (Docket No. 35), is denied.

An appropriate Order follows.

<i><u>s/ W. Scott Hardy</u></i><br>
W. Scott Hardy<br>
United States District Judge

Date: December 22, 2023

cc/ecf: All counsel of record
        United States Marshal
        United States Pretrial Services